UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN  DIVISION

———

MORRIS WEATHERSPOON,

                    Plaintiff,                    Case No. 1:14-cv-707

v.                                          Honorable Janet T. Neff

JAY CHOI et al.,

                    Defendants.

_____/

## OPINION

        This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*.  Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief.  28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c).  The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible.  *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).  Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against the named Defendants, except for Plaintiff's Eighth and Fourteenth Amendment claims against Defendants Caler, Lean, Choi, Oetman, Desjarden, Miller, Wood, Perez, Castor, Busman, Santiago, Enz, Johnson, Johnston, Heard, Lorentz and Huyge.

**Factual Allegations**

Plaintiff is incarcerated in the Muskegon Correctional Facility, but the events giving rise to his complaint occurred at the Richard A. Handlon Correctional Facility.  In his *pro se* complaint, Plaintiff sues fifty named Defendants as follows:  Social Workers Jeffrey Caler and Ashley Oetman; Nurses (Unknown) Harding, Sherri Hernandez-Cruz, Mark Castor, (Unknown) Smith, (Unknown) Lorentz, Kay Stouffer, (Unknown) Lewis, (Unknown) Wendt, and (Unknown) Hasseldorf; Nurse Supervisor Joshua Langdon; Doctors (Unknown) Huyge and Richard Czop; Psychiatrists Armando Santiago, Rebecca Busman, (Unknown) Shafer, Jay Choi, (Unknown) Gould, Kathleen Mutschler and (Unknown) Gildersleeve; Mental Health Professional Erica Enz; Director of Mental Health Greg Johnson; Health Unit Manager Michelle Pilon; Lieutenants (Unknown) Wood, (Unknown) Allen and (Unknown) Cook; Sergeants (Unknown) Cassel and (Unknown) Sutton; Segregation Housing Unit Manager (Unknown) Kirsdorf; Correctional Officers J. Somers, (Unknown) Desjarden, (Unknown) Clark, (Unknown) Heard, (Unknown) Griffith, (Unknown) Boland, (Unknown) Slater, (Unknown) Kolowickzi, (Unknown) Eerdman, (Unknown) Rosewizki, (Unknown) Ruthruff, (Unknown) Sutton, (Unknown) Kolsten, (Unknown) Castle, (Unknown) Mullins and (Unknown) Johnston; Warden C. Stoddard; Deputy Warden (Unknown) Laurer; Grievance Coodinator C. Heffelbower; Case Manager (Unknown) Lean; and Michigan Department of Corrections Director Daniel Heyns.  Plaintiff also sues various unknown parties.

In his amended forty-five page complaint (docket #11), Plaintiff alleges a vast conspiracy by prison employees to fabricate a major misconduct charge for possession of a weapon for the purpose of deeming Plaintiff mentally ill and forcibly injecting him with psychotropic medications.  Plaintiff maintains that he is not mentally ill and that Defendants are violating his

Eighth Amendment rights by refusing to discharge him from mental health treatment and medicating him against his will. Plaintiff also raises claims concerning the conditions of his confinement while in segregation and an observation cell. Plaintiff further alleges that he was denied proper treatment for an abscessed femur in his left leg and proper oral heath treatment during the same period of confinement.

While Plaintiff makes some specific factual allegations against individual Defendants at the beginning of the amended complaint, the majority of his complaint is composed of repetitive, sweeping allegations against long lists of Defendants. For example Plaintiff alleges in paragraph 22 of the amended complaint (verbatim):

> The direct and indirect, cold malicious and sadistic behavior by Defendants Caler, Santiago, Busman, Enz, Johnson, Shafer, Choi, Gould, Gildersleeve, Mutschler, Oetman, Lean, Stoddard, Laurer, Stoddard, Sutton, Allen, Cook, Wood, Cassel, Kirsdorf, Somers, Clark, Heard, Griffith, Boland, Slater, Kolomikcz, Perez, Eerdman, Rosewinski, Ruthruff, Kolsten, Castle, Mullins, Johnston, Desjarden, Unknown Parties of Corizon and Unknown Parties of Maxor violated Plaintiff Weatherspoon's rights under the Eighth Amendment when Defendants (supra) used deception and denied Plaintiff Weatherspoon right and access to legal and personal property before the mental health panel hearing notice which would of provided Plaintiff with the opportunity to obtain, prepare, and present clear and convincing evidence, irrefutable and incontrovertible evidence that demonstrate and support Plaintiff Weatherspoon's theory of a conspiracy maintained by numerous MDOC prison officials determined to set up Plaintiff with 8" knife and false misconduct reports. The mental health providers attempt to cover up the corruption thats maintained by numerous MDOC prison officials and or satisfied the conspiracy by comfortably lying about Plaintiff Weatherspoon's mental health state with desire to establish a probable cause with intent and comments that include Plaintiff Weatherspoon is a threat, harm and danger to himself and the need for mental health services and forced injections of powerful antipsychotic medications (Risperdal, Haldol, Cogennin, etc.) against Plaintiff's will was medically sound, appropriate and necessary. Defendants (supra) denied Plaintiff the right, ability, opportunity and access to evidence that is so powerful that a layman would agree and reasonably believe that Plaintiff Weatherspoon did not possess an 8" knife or weapon and the need for mental health services and forced injections of powerful antipsychotic medication (Risperdal, Haldol) against the Plaintiff's will was not medically sound, appropriate and necessary. Defendants (supra) foreseen, agreed with the plan to

distribute, sedate and administer the powerful drug Risperdal against Plaintiff Weathspoon's will, when knowing Risperdal to be life threatening with reckless disregard to Plaintiff's health when knowing the United States government considered Risperdal to be illegal and will produce longlasting, severe and irreversible side effects with permanent injuries to Plaintiff Weatherspoon's mind and body, while using Plaintiff Weatherspoon as a tool to conduct human experimentation for pecuniary gains and job security.  By these actions of Defendants (supra) violated Plaintiff Weatherspoon's First, Fourth, Fifth, Sixth, Eighth and Fourteenth Amendment rights to the United States Constitution, and is causing Plaintiff nerve twitching; jaw shaking; trouble remembering; involuntary movements of body and facial parts; great fears of lingering death and retardation before 50; head and chest pains; worry and concern from the developed symptoms of heart disease, tardive dyskinesia, acute dystonia, Parkinsons disease and infertility; impotence/erection dysfunction, pain, suffering, physical injury, mental and emotional distress.

(Am. Comp., ¶ 22, docket #11, Page ID#188.)[1]

Plaintiff makes specific factual allegations in the amended complaint only with regard to Defendants Auen, Sutton, Caler, Lean, Shafer, Choi, Oetman, Desjarden, Miller, Wood, Perez, Castor, Busman, Santiago, Enz, Johnson, Johnston, Heard, Lorentz and Huyge.  With regard to Defendant Auen, Plaintiff alleges that on April 30, 2013, he reported to the MTU health care building for medical intake.  After intake, Defendant Lieutenant Auen ordered Plaintiff to report to a cell in e-Housing Unit.  Plaintiff claims that he was housed with prisoner Bell, "who[m] had feces and urine spread throughout Plaintiff's area of control and Prisoner Bell was drooling, dripping with urine and saliva all over persons."  (Am. Compl., ¶ 2, docket #11, Page ID#177.)

Plaintiff claims that he requested protective custody to Defendant Sergeant Sutton "out of fear for life and safety  from prison gangs and conditions of confinement."  (Am. Compl., ¶ 2, docket #11, Page ID#177.)  In response to Plaintiff's request, Sutton allegedly confined Plaintiff

---

[1]Plaintiff made similar allegations in his original complaint, which was not filed on the requisite form.  The Court issued an order requiring Plaintiff to file to an amended complaint on the form.  In the order, the Court directed Plaintiff to specifically allege how each of the named Defendants acted in violation of his federal rights.

to segregation housing.  Plaintiff alleges that while he was in segregation housing from April 30

through May 8, 2013, he was denied access to writing paper, grievance forms, health care request

forms, toothpaste, toothbrush, prescribed pain medication and personal property.  While he was in

segregation, Plaintiff claims that Defendants Caler and Lean wanted him to return to e-Housing Unit

in order to participate in a mental health program.  Plaintiff made repeated demands to Caler and

Lean to be discharged from the mental health program because he was not mentally ill, but the

victim of a conspiracy.  Caler allegedly threatened that, if Plaintiff did not return to the treatment

program, he would be transferred "to a discipline problem prison with inmates who suffer severe

mental impairments, plagued by gangs sexual and physical assaults which is unsuitable to

rehabilitate Plaintiff . . . ."  (Am. Compl., ¶ 3, Page ID#178.)  Plaintiff further claims that Defendant

Shafer "burst out in great laughter" when Plaintiff explained his conspiracy theory to him.  (Am.

Compl., ¶ 4, Page ID#178.)   Shafer further responded by telling Plaintiff that there was no

conspiracy and no one was out to harm him.

Plaintiff alleges that he was forcibly confined to an observation cell[2] on May 3, 2013,

pending a mental health panel hearing scheduled for May 7.  According to the Notice of Hearing

prepared by Defendant Choi, Plaintiff had been agitated and delusional and refused his prescribed

medication on the ground that he is not mentally ill.  (Notice of Hearing, docket #1-1, Page ID#77.)

---

[2]An observation room is a cell or room designated to temporarily house prisoners referred for mental health evaluation or continued on observation status pursuant to a management plan developed by a qualified medical professional.  Michigan Department of Corrections (MDOC) Policy Directive 04.06.115(Q).  Under the policy, an observation room shall not contain structures, fixtures, or objects which could reasonably be used to aid in a suicide attempt or other self-injurious, assaultive, or destructive behavior or obstruct the view of the prisoner.  (*Id.*)  In addition, it must be stripped, except for a mattress and a tear-resistant blanket, prior to a prisoner being placed in the room.  However, medically necessary items are allowed as ordered by a physician or psychiatrist. (*Id.*)  In addition to routine observation during rounds, a prisoner in an observation room must be monitored through unrestricted face-to-face visual observation until the prisoner is evaluated by a qualified medical professional and a management plan is implemented. (*Id.*)  The policy provides for additional precautions to reduce the risk of self-harm by the prisoner, including a tear-resistant gown and foods that do not require the use of eating utensils.  *See* Policy Directive 04.06.115(R).

Defendant Choi further stated that Plaintiff had been loud and disturbed, hallucinated and had paranoid delusions.  (*Id*.)  Defendant Caler allegedly told Plaintiff that he was being placed on observation status because Plaintiff was not taking his medication and was hearing voices.  Plaintiff claims that he was "stripped naked and placed into a one piece bam bam suit with one blanket (suicide blanket) and 1 bedroll which temperatures reached near freezing temperatures and Plaintiff Weatherspoon had to remain barefooted and provided finger foods."  (Am. Compl., ¶ 5, Page ID#179.)  During an examination on May 3, Plaintiff repeatedly told Defendant Choi that he was not suffering from mental illness and asked to be discharged from the mental health program.

Plaintiff claims that in preparation for the mental health panel hearing, Defendants Oetman and Desjarden refused to obtain Plaintiff's legal and personal property which allegedly contained "clear and convincing evidence, irrefutable and uncontravertible evidence demonstrate and support Plaintiff Weatherspoon's theory of a conspiracy . . . ." (Am. Compl., ¶ 7, Page ID#180.)  On May 7, Defendants Miller, Wood and Perez handcuffed Plaintiff and transported him by wheelchair to the hearing.  Again, Plaintiff asked Defendants Miller, Wood and Perez to assist him in obtaining his personal and legal property in order to prove the conspiracy against him, but they refused.  At the conclusion of the hearing, Defendant panel members Santiago, Busman and Enz concluded that Plaintiff was mentally ill and that the proposed plan of service as stated by the treating psychiatrist was suitable.  (Report and Order of Hrg. Comm., docket #1-1, Page ID#82.) Plaintiff alleges that immediately after the hearing concluded, Defendants Miller, Wood and Perez used excessive force to restrain Plaintiff while Defendant Castor injected Plaintiff with the powerful antipsychotic drug  Risperdal.  Plaintiff appealed the panel's decision, but it was affirmed by Defendant Johnson on May 13.

Plaintiff was moved from the observation cell back to a regular segregation cell on May 8, 2013. Defendant Caler informed Plaintiff that he would be receiving injections of Risperdal every two weeks. On May 21, 2013, Defendants Johnston and Heard forcibly restrained Plaintiff while Defendant Lorentz injected him with Risperdal. Plaintiff alleges throughout his complaint that he is suffering "horrific side effects" and "near death experiences" from the injected drugs, including (verbatim): "[G]reat fear of death and retardation before age 50; feelings of being a victim of human experimentation; nerve twitch; jaw shaking; difficulty urinating; trouble remembering; uncomfortable inner feelings of unhappiness and restlessness; involuntary movements of body and facial parts; internal and external tingle; difficultly thinking, concentrating and sleeping; great concerns and worries of developing heart disease; Tardive Disease; Parkinson Disease; acute dystonia; gynecomastia and infertility; erection disfunction/impotence; headaches; chest pains; pain; suffering; physical injury; mental and emotional distress. (Compl. ¶¶ 10, 20.)

Plaintiff also claims that on June 13, 2013, he experienced severe pain from an abscessed left femur, but Defendant Huyge denied him medical treatment.

For relief, Plaintiff seeks millions of dollars in monetary damages from each of the named Defendants.

## Discussion

### I.      Conclusory Allegations

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements,

do not suffice."). The court must determine whether the complaint contains "enough facts to state

a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although

the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than

a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*,

550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the

mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the

pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill*

*v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility

standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1)

and 1915(e)(2)(B)(i)).

        As set forth above, the majority of Plaintiff's complaint is composed of repetitive,

sweeping allegations against long lists of Defendants. In those instances, Plaintiff fails to

specifically allege how each of the named Defendants acted to violate his federally protected rights.

Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state

a claim under § 1983. *See Iqbal*, 556 U.S. at 678-69; *Twombly*, 550 U.S. at 555. Because Plaintiff

makes specific factual allegations only with regard to Defendants Auen, Sutton, Caler, Lean, Shafer,

Choi, Oetman, Desjarden, Miller, Wood, Perez, Castor, Busman, Santiago, Enz, Johnson, Johnston,

Heard, Lorentz and Huyge, the remaining Defendants will be dismissed for failure to state a claim.

II.    **Remaining claims supported by specific factual allegations**

A.      **Defendant Auen**

Plaintiff alleges that on April 30, 2013, he reported to the MTU health care building

for medical intake.  After intake, Defendant Lieutenant Auen ordered Plaintiff to report to a cell in

e-Housing Unit.  Plaintiff claims that he was housed with prisoner Bell, "whom had feces and urine

spread throughout Plaintiff's area of control and Prisoner Bell was drooling, dripping with urine and

saliva all over persons."  (Am. Compl., ¶ 2, docket #11, Page ID#177.)

The Eighth Amendment imposes a constitutional limitation on the power of the states

to punish those convicted of crimes.  Punishment may not be "barbarous" nor may it contravene

society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981).  The

Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and

wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting

*Rhodes*, 452 U.S. at 346).  The deprivation alleged must result in the denial of the "minimal civilized

measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596,

600-01 (6th Cir. 1998).  The Eighth Amendment is only concerned with "deprivations of essential

food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*,

452 U.S. at 348 (citation omitted).  Moreover, "[n]ot every unpleasant experience a prisoner might

endure while incarcerated constitutes cruel and unusual punishment within the meaning of the

Eighth Amendment." *Ivey*, 832 F.2d at 954.

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that

he faced a sufficiently serious risk to his health or safety and that the defendant official acted with

"'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th

Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference

standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)).

Plaintiff alleges only that Defendant Auen ordered him to report to the cell that he shared with Prisoner Bell. Plaintiff does not allege that Auen was aware of the conditions in the cell or that Plaintiff reported the conditions to Auen. Consequently, the Court cannot find that Defendant Auen was deliberately indifferent to Plaintiff's health or safety. Plaintiff, therefore, fails to state an Eighth Amendment claim against Defendant Auen.

B.    **Defendant Sutton**

Plaintiff claims that he requested protective custody to Defendant Sergeant Sutton "out of fear for life and safety  from prison gangs and conditions of confinement." (Am. Compl., ¶ 2, docket #11, Page ID#177.)  In response to Plaintiff's request, Sutton confined Plaintiff to segregation housing. Plaintiff alleges that, while in segregation, he was denied access to writing paper, grievance forms, health care request forms, toothpaste, toothbrush, prescribed pain medication and personal property.

To determine whether segregation of an inmate from the general prison population involves the deprivation of a liberty interest protected by the due process clause, the Court must determine if the segregation imposes an "atypical and significant" hardship on the inmate "in relation to the ordinary incidents of prison life." *Jones v. Baker*, 155 F.3d 810, 811 (6th Cir. 1998) (quoting *Sandin v. Conner*, 515 U.S. 472, 483 (1995)). Under various circumstances, the Sixth Circuit has repeatedly found that confinement to administrative segregation does not present an "atypical and significant" hardship implicating a protected liberty interest. *See Jones*, 155 F.3d at 812-23 (two years of segregation while inmate was investigated for murder of prison guard in riot); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-91 (6th Cir. 1995) (inmate serving life sentence was placed

in segregation after serving thirty days of detention for misconduct conviction of conspiracy to commit assault and battery); *Mackey v. Dyke*, 111 F.3d 460 (6th Cir. 1997) (one year of segregation after inmate was found guilty of possession of illegal contraband and assault and where reclassification was delayed due to prison crowding). The Sixth Circuit had held that a prisoner may present a § 1983 claim alleging that placement in administrative segregation is "atypical and significant in relation to the ordinary incidents of prison life" only in extreme circumstances. *See Harden-Bey v. Rutter*, 524 F.3d 789, 794 (6th. Cir. 2008). Plaintiff had not alleged the type of extreme circumstances that would result in a finding of atypical and significant hardship. Consequently, Plaintiff fails to state a due process claim arising from his placement in segregation.[3]

Likewise, Plaintiff fails to state an Eighth Amendment claim arising from his placement in segregation. The Eighth Amendment prohibits any punishment which violates the civilized standards of humanity and decency, or involves the unnecessary and wanton infliction of pain. *See Estelle*, 429 U.S. at 102-03. Because placement in segregation is a routine discomfort that is a part of the penalty that criminal offenders pay for their offenses against society, it is insufficient to support an Eighth Amendment claim. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992).

---

[3]The Court further notes that Plaintiff's placement in temporary segregation upon his request for protection, was consistent with MDOC Policy Directive 05.01.140(X), which provides:

> Whenever staff believe a general population prisoner may be in need of protection or a general population prisoner requests protection the prisoner shall be placed in temporary segregation or, if the institution does not have temporary segregation, in other suitable housing within the institution to meet the prisoner's protection needs pending investigation. An investigation shall be immediately conducted and the findings documented on a Request for Protection/Investigation Report (CSJ-686). The Request for Protection/Investigation Report shall be forwarded to SCC as soon as possible but no later than seven business days after the prisoner's placement in temporary segregation or, if the institution does not have temporary segregation cells available, other suitable housing for review and determination as to further action to be taken. If SCC determines that protection is not needed, reasons for this finding shall be documented on the form.

While in segregation, Plaintiff alleges that he was denied access to writing paper, grievance forms, health care request forms, toothpaste, toothbrush, prescribed pain medication and personal property.  Plaintiff, however, does not allege to whom he made requests for those items. Because Plaintiff does not attribute any of these alleged deprivations to any particular Defendant, the Court cannot draw the reasonable inference that Defendant Sutton or any other defendant is liable for the misconduct alleged.  *See Iqbal*, 556 U.S. at 679.  Moreover, Defendant Sutton cannot be held liable for the unconstitutional conduct of other MDOC employees under a theory of respondeat superior or vicarious liability.  *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009).  A claimed constitutional violation must be based upon active unconstitutional behavior.  *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act.  *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004).  "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Iqbal*, 556 U.S. at 676. Plaintiff has failed to allege that Defendant Sutton engaged in any active unconstitutional behavior. Accordingly, he fails to state a claim against him.

### C.   **Defendant Shafer**

Plaintiff claims that Defendant Shafer "burst out in great laughter" when Plaintiff explained his conspiracy theory to him.  (Am. Compl., ¶ 4, Page ID#178.)  Shafer further responded by telling Plaintiff that there was no conspiracy and no one was out to harm him.  Plaintiff's

-12-

allegations against Shafer fail to implicate a constitutionally protected right.  To the extent Plaintiff

claims that Defendant Shafer verbally harassed or mocked him, he fails to state a claim.  The use

of harassing or degrading language by a prison official, although unprofessional and deplorable,

does not rise to constitutional dimensions.   *See Ivey v. Wilson*, 832 F.2d 950, 954-55 (6th Cir.

1987); *see also Johnson v. Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (harassment and verbal abuse

do not constitute the type of infliction of pain that the Eighth Amendment prohibits); *Violett v.*

*Reynolds,* No. 02-6366, 2003 WL 22097827, at *3 (6th Cir.  Sept. 5, 2003) (verbal abuse and

harassment do not constitute punishment that would support an Eighth Amendment claim);

*Thaddeus-X v. Langley*, No. 96-1282, 1997 WL 205604, at *1 (6th Cir. Apr. 24, 1997) (verbal

harassment is insufficient to state a claim); *Murray v. U.S. Bureau of Prisons*, No. 95-5204, 1997

WL 34677, at *3 (6th Cir. Jan. 28, 1997) ("Although we do not condone the alleged statements, the

Eighth Amendment does not afford us the power to correct every action, statement or attitude of a

prison official with which we might disagree."); *Clark v. Turner*, No. 96-3265, 1996 WL 721798,

at *2 (6th Cir. Dec. 13, 1996) ("Verbal harassment and idle threats are generally not sufficient to

constitute an invasion of an inmate's constitutional rights."); *Brown v. Toombs*, No. 92-1756, 1993

WL 11882 (6th Cir. Jan. 21, 1993) ("Brown's allegation that a corrections officer used derogatory

language and insulting racial epithets is insufficient to support his claim under the Eighth

Amendment.").  Accordingly, Plaintiff fails to state a claim against Defendant Shafer arising from

his alleged comments.

> D.   **Defendants Caler, Lean, Choi, Oetman, Desjarden, Miller, Wood, Perez, Castor, Busman, Santiago, Enz, Johnson, Johnston, Heard, Lorentz and Huyge**

Plaintiff claims that he was held in an observation cell from May 3 through 8, 2013.

According to Plaintiff, he was "stripped naked and placed into a one piece bam bam suit with one

blanket (suicide blanket) and 1 bedroll which temperatures reached near freezing temperatures and Plaintiff Weatherspoon had to remain barefooted and provided finger foods." (Am. Compl., ¶ 5, Page ID#179.)  While Plaintiff alleges that it was "near freezing" in the observation cell, he does not allege that he suffered any negative physical effects from the cold temperature.  Allegations about temporary inconveniences, e.g., being deprived of a lower bunk, subjected to a flooded cell, or deprived of a working toilet, do not demonstrate that the conditions fell beneath the minimal civilized measure of life's necessities as measured by a contemporary standard of decency.  *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir.  2001); *see also Wells v. Jefferson County Sheriff Dept.*, 35 F. App'x 142, 143 (6th Cir. 2002) (county jail inmate's six-day stay in holding cell that was cold and was regularly sprayed with insecticides and in which inmate slept on mattress on floor did not rise to level of Eighth Amendment violation).  Moreover, while Plaintiff was limited to "finger foods," he does not allege that he was deprived of adequate nutrition to maintain normal health.  *See Cunningham v. Jones*, 567 F.2d 653, 659-60 (6th Cir. 1977).  Consequently, the Court will dismiss Plaintiff's Eighth amendment claims concerning the conditions of his five-day confinement in the observation cell.

At this stage of the proceedings, Plaintiff's allegations are sufficient to state Eighth and Fourteenth Amendment claims against Defendants Caler, Lean, Choi, Oetman, Desjarden, Miller, Wood, Perez, Castor, Busman, Santiago, Enz, Shafer, Johnson, Johnston, Heard and Lorentz arising from the mental health panel proceedings that resulted in a finding of mental illness and the resulting forced medication.  Plaintiff's allegations also are sufficient to state an Eighth Amendment claim against Defendant Huyge for denial of medical treatment for Plaintiff's abscessed femur.

**Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that all of the named Defendants will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c), except for Plaintiff's Eighth and Fourteenth Amendment claims against Defendants Caler, Lean, Choi, Oetman, Desjarden, Miller, Wood, Perez, Castor, Busman, Santiago, Enz, Johnson, Johnston, Heard, Lorentz and Huyge.

An Order consistent with this Opinion will be entered.


Dated:   March 20, 2015              /s/ Janet T. Neff
                                     Janet T. Neff
                                     United States District Judge