UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MORRIS WEATHERSPOON #471817,

        Plaintiff,                              Hon. Janet T. Neff

v.                                             Case No. 1:14 CV 707

JAY CHOI, et al.,

        Defendants.
_____/

**REPORT AND RECOMMENDATION**

This matter is before the Court on Defendant Huyge's Motion for Summary Judgment. (Dkt. #69). Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendant's motion be **granted**.

**BACKGROUND**

Plaintiff is incarcerated in the Marquette Branch Prison, but the events giving rise to his complaint occurred at the Richard A. Handlon Correctional Facility. Plaintiff initiated this action against fifty (50) named individuals: Social Workers Jeffrey Caler and Ashley Oetman; Nurses (Unknown) Harding, Sherri Hernandez-Cruz, Mark Castor, (Unknown) Smith, (Unknown) Lorentz, Kay Stouffer, (Unknown) Lewis, (Unknown) Wendt, and (Unknown) Hasseldorf; Nurse Supervisor Joshua Langdon; Doctors (Unknown) Huyge and Richard Czop; Psychiatrists Armando Santiago, Rebecca Busman, (Unknown) Shafer, Jay Choi, (Unknown) Gould, Kathleen Mutschler and (Unknown) Gildersleeve; Mental Health Professional Erica Enz; Director of Mental Health Greg Johnson; Health Unit Manager

Michelle Pilon; Lieutenants (Unknown) Wood, (Unknown) Allen and (Unknown) Cook; Sergeants (Unknown) Cassel and (Unknown) Sutton; Segregation Housing Unit Manager (Unknown) Kirsdorf; Correctional Officers J. Somers, (Unknown) Desjarden, (Unknown) Clark, (Unknown) Heard, (Unknown) Griffith, (Unknown) Boland, (Unknown) Slater, (Unknown) Kolowickzi, (Unknown) Eerdman, (Unknown) Rosewizki, (Unknown) Ruthruff, (Unknown) Sutton, (Unknown) Kolsten, (Unknown) Castle, (Unknown) Mullins and (Unknown) Johnston; Warden C. Stoddard; Deputy Warden (Unknown) Laurer; Grievance Coodinator C. Heffelbower; Case Manager (Unknown) Lean; and Michigan Department of Corrections Director Daniel Heyns. Plaintiff also sues various unknown parties.

In his amended complaint, Plaintiff alleges a vast conspiracy by prison employees to fabricate a major misconduct charge for the purpose of deeming Plaintiff mentally ill and forcibly injecting him with psychotropic medications. Plaintiff maintains that he is not mentally ill and that Defendants are violating his Eighth Amendment rights by refusing to discharge him from mental health treatment and medicating him against his will. Plaintiff also raises claims concerning the conditions of his confinement while in segregation and an observation cell. Plaintiff further alleges that he was denied proper treatment for an abscess in his left leg.

While Plaintiff makes certain specific factual allegations against individual Defendants at the beginning of the amended complaint, the majority of Plaintiff's complaint consists of vague and conclusory allegations against numerous Defendants. Plaintiff makes specific factual allegations in the amended complaint only with regard to Defendants Auen, Sutton, Caler, Lean, Shafer, Choi, Oetman, Desjarden, Miller, Wood, Perez, Castor, Busman, Santiago, Enz, Johnson, Johnston, Heard, Lorentz and Huyge. With regard to Defendant Auen, Plaintiff alleges that on April 30, 2013, he reported to the MTU

health care building for medical intake. After intake, Defendant Lieutenant Auen ordered Plaintiff to report to a cell in e-Housing Unit. Plaintiff claims that he was housed with prisoner Bell, "who had feces and urine spread throughout Plaintiff's area of control and Prisoner Bell was drooling, dripping with urine and saliva all over persons." (PageID.177).

Plaintiff claims that he made a request for protective custody to Defendant Sergeant Sutton "out of fear for life and safety from prison gangs and conditions of confinement." (PageID.177). In response to Plaintiff's request, Sutton allegedly confined Plaintiff to segregation housing. Plaintiff alleges that while he was in segregation housing from April 30 through May 8, 2013, he was denied access to writing paper, grievance forms, health care request forms, toothpaste, toothbrush, prescription pain medication, and personal property. Plaintiff claims that while he was in segregation, Defendants Caler and Lean wanted him to return to e-Housing Unit in order to participate in a mental health program. Plaintiff made repeated demands to Caler and Lean to be discharged from the mental health program because he was not mentally ill, but the victim of a conspiracy. Caler allegedly threatened that, if Plaintiff did not return to the treatment program, he would be transferred "to a discipline problem prison with inmates who suffer severe mental impairments, plagued by gangs sexual and physical assaults which is unsuitable to rehabilitate Plaintiff . . . ." (PageID.178). Plaintiff further claims that Defendant Shafer "burst out in great laughter" when Plaintiff explained his conspiracy theory to him. (PageID.178). Shafer further responded by telling Plaintiff that there was no conspiracy and no one was out to harm him.

Plaintiff alleges that he was forcibly confined to an observation cell on May 3, 2013, pending a mental health panel hearing scheduled for May 7, 2013. According to the Notice of Hearing prepared by Defendant Choi, Plaintiff had been agitated and delusional and refused his prescribed

medication on the ground that he is not mentally ill. (PageID.77). Defendant Choi further stated that Plaintiff had been loud and was experiencing hallucinations and paranoid delusions. (PageID.77). Defendant Caler allegedly told Plaintiff that he was being placed on observation status because he was not taking his medication and was hearing voices. Plaintiff claims that he was placed into the observation cell without adequate clothing and was provided only "finger food." (PageID.179). During a May 3, 2013 examination, Plaintiff stated that he was not suffering from mental illness and asked to be discharged from the mental health program.

Plaintiff claims that in preparation for the mental health panel hearing, Defendants Oetman and Desjarden refused to obtain Plaintiff's legal and personal property which allegedly contained "clear and convincing evidence, irrefutable and uncontravertible evidence" supporting his conspiracy theory. (PageID.180). On May 7, 2013, Defendants Miller, Wood and Perez handcuffed Plaintiff and transported him by wheelchair to the hearing. Plaintiff again asked Defendants Miller, Wood, and Perez to assist him in obtaining his personal and legal property in order to prove the conspiracy against him, but they refused. At the conclusion of the hearing, Defendant panel members Santiago, Busman, and Enz concluded that Plaintiff was mentally ill and that the proposed plan of service as stated by the treating psychiatrist was suitable. (PageID.82). Plaintiff alleges that immediately after the hearing concluded, Defendants Miller, Wood and Perez used excessive force to restrain him while Defendant Castor injected Plaintiff with the powerful antipsychotic drug Risperdal. Plaintiff's appeal of the panel's decision was denied by Defendant Johnson on May 13, 2013.

Plaintiff was moved from the observation cell back to a regular segregation cell on May 8, 2013. Defendant Caler informed Plaintiff that he would be receiving injections of Risperdal every two weeks. On May 21, 2013, Defendants Johnston and Heard forcibly restrained Plaintiff while

Defendant Lorentz injected him with Risperdal. Plaintiff alleges that he is suffering "horrific side effects" and "near death experiences" from the injected drugs, including:

> [G]reat fear of death and retardation before age 50; feelings of being a victim of human experimentation; nerve twitch; jaw shaking; difficulty urinating; trouble remembering; uncomfortable inner feelings of unhappiness and restlessness; involuntary movements of body and facial parts; internal and external tingle; difficultly thinking, concentrating and sleeping; great concerns and worries of developing heart disease; Tardive Disease; Parkinson Disease; acute dystonia; gynecomastia and infertility; erection disfunction/impotence; headaches; chest pains; pain; suffering; physical injury; mental and emotional distress.

(PageID.182, 186).

Plaintiff also claims that on June 13, 2013, Defendant Huyge denied him medical treatment for an abscess on his left femur.

In a March 20, 2015 Opinion and Order, the Honorable Janet T. Neff dismissed all of Plaintiff's claims save the following: (1) Eighth and Fourteenth Amendment claims against Defendants Choi, Caler, Castor, Lorentz, Santiago, Busman, Enz, Johnson, Wood, Desjarden, Oetman, Heard, McAuliffe (aka Lean), Johnston, Perez, and Miller "arising from the mental health panel proceedings that resulted in a finding of mental illness and the resulting forced medication" and (2) Eighth Amendment claim against Defendant Huyge "for denial of medical treatment for Plaintiff's abscessed femur." (Dkt. #13-14). Defendant Huyge now moves for summary judgment.

## **SUMMARY JUDGMENT STANDARD**

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party moving for summary judgment can satisfy its burden by demonstrating "that the

respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005); *see also*, *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The fact that the evidence may be controlled or possessed by the moving party does not change the non-moving party's burden "to show sufficient evidence from which a jury could reasonably find in her favor, again, so long as she has had a full opportunity to conduct discovery." *Minadeo*, 398 F.3d at 761 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986)).

Once the moving party demonstrates that "there is an absence of evidence to support the nonmoving party's case," the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial." *Amini*, 440 F.3d at 357 (citing *Anderson*, 477 U.S. at 247-48; *Celotex Corp. v. Catrett*, 477 U.S. at 324). While the Court must view the evidence in the light most favorable to the non-moving party, the party opposing the summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357. The existence of a mere "scintilla of evidence" in support of the non-moving party's position is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005) (quoting *Anderson*, 477 U.S. at 252). The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006) (citations omitted).

Moreover, the non-moving party cannot defeat a properly supported motion for summary judgment by "simply arguing that it relies solely or in part upon credibility determinations." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004). Rather, the non-moving party "must be able to point to some facts which may or will entitle him to judgment, or refute the proof of

the moving party in some material portion, and. . .may not merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Id.* at 353-54. In sum, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735.

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, *see Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 788 (6th Cir. 2000); *Minadeo*, 398 F.3d at 761, a moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d at 1056 (same). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

## ANALYSIS

The Eighth Amendment's prohibition against cruel and unusual punishment applies not only to punishment imposed by the state, but also to deprivations which occur during imprisonment and are not part of the sentence imposed. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Estelle v. Gamble*, 429 U.S. 97, 101-02 (1976). Accordingly, the Eighth Amendment protects against the unnecessary and wanton infliction of pain, the existence of which is evidenced by the "deliberate indifference" to an inmate's "serious medical needs." *Estelle*, 429 U.S. at 104-06; *Napier v. Madison County, Kentucky*, 238 F.3d 739, 742 (6th Cir. 2001).

The analysis by which a defendant's conduct is evaluated consists of two-steps. First, the Court must determine, objectively, whether the alleged deprivation was sufficiently serious. A "serious medical need," sufficient to implicate the Eighth Amendment, is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008). If the objective test is met, the Court must then determine whether the defendant possessed a sufficiently culpable state of mind:

> a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Id.* at 837.

In other words, the plaintiff "must present evidence from which a trier of fact could conclude 'that the official was subjectively aware of the risk' and 'disregard[ed] that risk by failing to

take reasonable measures to abate it." *Greene v. Bowles*, 361 F.3d 290, 294 (6th Cir. 2004) (citing *Farmer*, 511 U.S. at 829, 847).

To the extent, however, that the plaintiff simply disagrees with the treatment he received, or asserts that he received negligent care, the defendant is entitled to summary judgment. *See Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999) (citing *Estelle*, 429 U.S. at 105-06) ("[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner"); *Brown v. Kashyap*, 2000 WL 1679462 at *1 (6th Cir., Nov. 1, 2000) (citing *Estelle*, 429 U.S. at 106) ("allegations of medical malpractice or negligent diagnosis and treatment" do not implicate the Eighth Amendment); *Mingus v. Butler*, 591 F.3d 474, 480 (6th Cir. 2010) (to prevail on an Eighth Amendment denial of medical treatment claim, "the inmate must show more than negligence or the misdiagnosis of an ailment"); *Robbins v. Black*, 351 Fed. Appx. 58, 62 (6th Cir., Nov. 3, 2009) ("mere negligence or malpractice is insufficient to establish an Eighth Amendment violation").

In support of his motion for summary judgment, Defendant Huyge has submitted copies of relevant portions of Plaintiff's medical record. (Dkt. #71). This evidence reveals the following.

On August 9, 2012, Plaintiff reported that he "felt [a] lump" in his left leg "that he is sure is a sign of heart attack or stroke." (PageID.455, 460). Plaintiff walked with a "steady gait" and exhibited no signs of injury. (PageID.455-56). An August 16, 2012 examination revealed "no functional changes to [Plaintiff's] leg." (PageID.461). X-rays of Plaintiff's left leg, taken August 20, 2012, revealed no osseous abnormality. (PageID.462). The doctor suggested that the lump in question "possibly represents old healed trauma" and "is likely an incidental finding." (PageID.462-63).

Treatment notes dated October 2, 2012, indicate that Plaintiff was complaining of continued leg pain for which he was requesting "pain medication." (PageID.464). An examination of

Plaintiff's leg revealed no abnormality. (PageID.465). Plaintiff's Motrin prescription was continued. (PageID.464-65). X-rays of Plaintiff's left leg, taken November 19, 2012, indicated that the lump in question was "most likely, old healed trauma of the distal femur." (PageID.467). The doctor also noted that the lump "could represent a benign exostosis lesion." (PageID.467). The results of a January 2, 2013 examination of Plaintiff's left leg were unremarkable. (PageID.470). Plaintiff's Motrin subscription was continued. (PageID.470). The results of a January 14, 2013 examination were likewise unremarkable. (PageID.472). A March 9, 2013 examination of Plaintiff's left leg revealed "completely normal" range of motion and absence of pain on palpation. (PageID.476). The results of an April 8, 2013 examination were unremarkable and Plaintiff's Motrin subscription was continued. (PageID.478).

On June 13, 2013, Plaintiff was examined by Defendant Huyge. (PageID.484-85). The results of an examination were unremarkable. (PageID.484). Defendant Huyge also reviewed the results of Plaintiff's previous x-rays and examinations. (PageID.439-40). Huyge determined that Plaintiff's condition had not worsened and, thus, no further diagnostic testing was warranted. (PageID.440). Defendant Huyge instructed Plaintiff to continue taking Motrin as needed. (PageID.440-41).

In response to Defendant's motion, Plaintiff has submitted a sworn declaration in which he asserts that Defendant Huyge should have referred him to a specialist who could "look into the underlying cause and source of" the difficulty he was experiencing with his left leg. (PageID.538-39). Plaintiff has also submitted copies of affidavits executed by two of his other care providers, both of whom assert that the difficulty Plaintiff was experiencing with his left leg was not significant and was properly treated. (PageID.541-52). Plaintiff has also submitted copies of portions of his medical record. (PageID.555-58, 563-64, 572-77). To the extent these records concern Plaintiff's left leg, such are

merely duplicative of evidence submitted by Defendant Huyge.  (PageID.462, 464-66, 473-74, 484-85, 563-64, 572-77).

In sum, there is no dispute that Plaintiff received treatment from Defendant Huyge. Plaintiff merely disagrees with the course of treatment he received or believes that such constituted negligent care.  As previously noted, however, such simply does not implicate the Eighth Amendment. Accordingly, the undersigned recommends that Defendant Huyge's motion for summary judgment be granted.

## CONCLUSION

For the reasons articulated herein, the undersigned recommends that <u>Defendant Huyge's Motion for Summary Judgment</u>, (Dkt. #69), be **granted**.  The undersigned further recommends that appeal of this matter would not be taken in good faith.  *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997); 28 U.S.C. § 1915(a)(3).

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice.  28 U.S.C. § 636(b)(1)(C).  Failure to file objections within the specified time waives the right to appeal the District Court's order.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

Respectfully submitted,

Date:  March 25, 2016               /s/ Ellen S. Carmody
                                                ELLEN S. CARMODY
                                                United States Magistrate Judge