UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MORRIS WEATHERSPOON #471817,

    Plaintiff,         Hon. Janet T. Neff

v.                Case No. 1:14 CV 707

JAY CHOI, et al.,

    Defendants.

_____/

## REPORT AND RECOMMENDATION

    This matter is before the Court on Defendants' Motion for Summary Judgment, (ECF No. 45 and ECF No. 46), and Defendants' Motion for Summary Judgment, (ECF No. 55 and ECF No. 56). Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendants' motions be **denied**.

## BACKGROUND

    Plaintiff is incarcerated in the Marquette Branch Prison, but the events giving rise to his complaint occurred at the Richard A. Handlon Correctional Facility. Plaintiff initiated this action against fifty (50) named individuals: Social Workers Jeffrey Caler and Ashley Oetman; Nurses (Unknown) Harding, Sherri Hernandez-Cruz, Mark Castor, (Unknown) Smith, (Unknown) Lorentz, Kay Stouffer, (Unknown) Lewis, (Unknown) Wendt, and (Unknown) Hasseldorf; Nurse Supervisor Joshua Langdon; Doctors (Unknown) Huyge and Richard Czop; Psychiatrists Armando Santiago, Rebecca Busman, (Unknown) Shafer, Jay Choi, (Unknown) Gould, Kathleen Mutschler and (Unknown) Gildersleeve; Mental Health Professional Erica Enz; Director of Mental Health Greg Johnson; Health Unit Manager Michelle Pilon; Lieutenants (Unknown) Wood, (Unknown) Allen and (Unknown) Cook;

Sergeants (Unknown) Cassel and (Unknown) Sutton; Segregation Housing Unit Manager (Unknown) Kirsdorf; Correctional Officers J. Somers, (Unknown) Desjarden, (Unknown) Clark, (Unknown) Heard, (Unknown) Griffith, (Unknown) Boland, (Unknown) Slater, (Unknown) Kolowickzi, (Unknown) Eerdman, (Unknown) Rosewizki, (Unknown) Ruthruff, (Unknown) Sutton, (Unknown) Kolsten, (Unknown) Castle, (Unknown) Mullins and (Unknown) Johnston; Warden C. Stoddard; Deputy Warden (Unknown) Laurer; Grievance Coodinator C. Heffelbower; Case Manager (Unknown) Lean; and Michigan Department of Corrections Director Daniel Heyns.  Plaintiff also sues various unknown parties.

In his amended complaint, Plaintiff alleges a vast conspiracy by prison employees to fabricate a major misconduct charge for the purpose of deeming Plaintiff mentally ill and forcibly injecting him with psychotropic medications.  Plaintiff maintains that he is not mentally ill and that Defendants are violating his Eighth Amendment rights by refusing to discharge him from mental health treatment and medicating him against his will.  Plaintiff also raises claims concerning the conditions of his confinement while in segregation and an observation cell.  Plaintiff further alleges that he was denied proper treatment for an abscess in his left leg.

While Plaintiff makes certain specific factual allegations against individual Defendants at the beginning of the amended complaint, the majority of Plaintiff's complaint consists of vague and conclusory allegations against numerous Defendants.  Plaintiff makes specific factual allegations in the amended complaint only with regard to Defendants Auen, Sutton, Caler, Lean, Shafer, Choi, Oetman, Desjarden, Miller, Wood, Perez, Castor, Busman, Santiago, Enz, Johnson, Johnston, Heard, Lorentz and Huyge.  With regard to Defendant Auen, Plaintiff alleges that on April 30, 2013, he reported to the MTU health care building for medical intake.  After intake, Defendant Lieutenant Auen ordered Plaintiff to

report to a cell in e-Housing Unit.  Plaintiff claims that he was housed with prisoner Bell, "who had feces and urine spread throughout Plaintiff's area of control and Prisoner Bell was drooling, dripping with urine and saliva all over persons."  (PageID.177).

Plaintiff claims that he made a request for protective custody to Defendant Sergeant Sutton "out of fear for life and safety from prison gangs and conditions of confinement." (PageID.177). In response to Plaintiff's request, Sutton allegedly confined Plaintiff to segregation housing.  Plaintiff alleges that while he was in segregation housing from April 30 through May 8, 2013, he was denied access to writing paper, grievance forms, health care request forms, toothpaste, toothbrush, prescription pain medication, and personal property.  Plaintiff claims that while he was in segregation, Defendants Caler and Lean wanted him to return to e-Housing Unit in order to participate in a mental health program.  Plaintiff made repeated demands to Caler and Lean to be discharged from the mental health program because he was not mentally ill, but the victim of a conspiracy.  Caler allegedly threatened that, if Plaintiff did not return to the treatment program, he would be transferred "to a discipline problem prison with inmates who suffer severe mental impairments, plagued by gangs sexual and physical assaults which is unsuitable to rehabilitate Plaintiff . . . ."  (PageID.178).  Plaintiff further claims that Defendant Shafer "burst out in great laughter" when Plaintiff explained his conspiracy theory to him. (PageID.178).  Shafer further responded by telling Plaintiff that there was no conspiracy and no one was out to harm him.

Plaintiff alleges that he was forcibly confined to an observation cell on May 3, 2013, pending a mental health panel hearing scheduled for May 7, 2013.  According to the Notice of Hearing prepared by Defendant Choi, Plaintiff had been agitated and delusional and refused his prescribed medication on the ground that he is not mentally ill.  (PageID.77).  Defendant Choi further stated that

Plaintiff had been loud and was experiencing hallucinations and paranoid delusions. (PageID.77). Defendant Caler allegedly told Plaintiff that he was being placed on observation status because he was not taking his medication and was hearing voices. Plaintiff claims that he was placed into the observation cell without adequate clothing and was provided only "finger food." (PageID.179). During a May 3, 2013 examination, Plaintiff stated that he was not suffering from mental illness and asked to be discharged from the mental health program.

Plaintiff claims that in preparation for the mental health panel hearing, Defendants Oetman and Desjarden refused to obtain Plaintiff's legal and personal property which allegedly contained "clear and convincing evidence, irrefutable and uncontravertible evidence" supporting his conspiracy theory. (PageID.180). On May 7, 2013, Defendants Miller, Wood and Perez handcuffed Plaintiff and transported him by wheelchair to the hearing. Plaintiff again asked Defendants Miller, Wood, and Perez to assist him in obtaining his personal and legal property in order to prove the conspiracy against him, but they refused. At the conclusion of the hearing, Defendant panel members Santiago, Busman, and Enz concluded that Plaintiff was mentally ill and that the proposed plan of service as stated by the treating psychiatrist was suitable. (PageID.82). Plaintiff alleges that immediately after the hearing concluded, Defendants Miller, Wood and Perez used excessive force to restrain him while Defendant Castor injected Plaintiff with the powerful antipsychotic drug Risperdal. Plaintiff's appeal of the panel's decision was denied by Defendant Johnson on May 13, 2013.

Plaintiff was moved from the observation cell back to a regular segregation cell on May 8, 2013. Defendant Caler informed Plaintiff that he would be receiving injections of Risperdal every two weeks. On May 21, 2013, Defendants Johnston and Heard forcibly restrained Plaintiff while

Defendant Lorentz injected him with Risperdal.  Plaintiff alleges that he is suffering "horrific side

effects" and "near death experiences" from the injected drugs, including:

> [G]reat fear of death and retardation before age 50; feelings of being a
> victim of human experimentation; nerve twitch; jaw shaking; difficulty
> urinating; trouble remembering; uncomfortable inner feelings of
> unhappiness and restlessness; involuntary movements of body and facial
> parts; internal and external tingle; difficultly thinking, concentrating and
> sleeping; great concerns and worries of developing heart disease; Tardive
> Disease; Parkinson Disease; acute dystonia; gynecomastia and infertility;
> erection disfunction/impotence; headaches; chest pains; pain; suffering;
> physical injury; mental and emotional distress.

(PageID.182, 186).

Plaintiff also claims that on June 13, 2013, Defendant Huyge denied him medical

treatment for an abscess on his left femur.

In a March 20, 2015 Opinion and Order, the Honorable Janet T. Neff dismissed all of

Plaintiff's claims save the following: (1) Eighth and Fourteenth Amendment claims against Defendants

Choi, Caler, Castor, Lorentz, Santiago, Busman, Enz, Johnson, Wood, Desjarden, Oetman, Heard,

McAuliffe (aka Lean), Johnston, Perez, and Miller "arising from the mental health panel proceedings

that resulted in a finding of mental illness and the resulting forced medication" and (2) Eighth

Amendment claim against Defendant Huyge "for denial of medical treatment for Plaintiff's abscessed

femur." (ECF Nos. 13-14).  Defendants Choi, Caler, Castor, Lorentz, Santiago, Busman, Enz, Johnson,

Wood, Desjarden, Oetman, Heard, McAuliffe, Johnston, Perez, and Miller now move for summary

judgment on the ground that Plaintiff has failed to exhaust his administrative remedies.

## SUMMARY JUDGMENT STANDARD

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party moving for summary judgment can satisfy its burden by demonstrating "that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005); *see also*, *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The fact that the evidence may be controlled or possessed by the moving party does not change the non-moving party's burden "to show sufficient evidence from which a jury could reasonably find in her favor, again, so long as she has had a full opportunity to conduct discovery." *Minadeo*, 398 F.3d at 761 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986)).

Once the moving party demonstrates that "there is an absence of evidence to support the nonmoving party's case," the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial." *Amini*, 440 F.3d at 357 (citing *Anderson*, 477 U.S. at 247-48; *Celotex Corp. v. Catrett*, 477 U.S. at 324). While the Court must view the evidence in the light most favorable to the non-moving party, the party opposing the summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357. The existence of a mere "scintilla of evidence" in support of the non-moving party's position is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005) (quoting *Anderson*, 477 U.S. at 252). The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006) (citations omitted).

Moreover, the non-moving party cannot defeat a properly supported motion for summary judgment by "simply arguing that it relies solely or in part upon credibility determinations." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004). Rather, the non-moving party "must be able to point to some facts which may or will entitle him to judgment, or refute the proof of the moving party in some material portion, and. . .may not merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Id.* at 353-54. In sum, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735.

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, *see Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 788 (6th Cir. 2000); *Minadeo*, 398 F.3d at 761, a moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d

at 1056 (same).  Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

## ANALYSIS

Pursuant to 42 U.S.C. § 1997e(a), a prisoner asserting an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust all available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516, 524 (2002).  Prisoners are no longer required to demonstrate exhaustion in their complaints. *See Jones v. Bock*, 549 U.S. 199, 216 (2007).  Instead, failure to exhaust administrative remedies is "an affirmative defense under the PLRA" which the defendant bears the burden of establishing. *Id.*  With respect to what constitutes proper exhaustion, the Supreme Court has stated that "the PLRA exhaustion requirement requires proper exhaustion" defined as "compliance with an agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90-93 (2006). In *Bock*, the Court reiterated that

> Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'  The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.

*Bock*, 549 U.S. at 218.

Michigan Department of Corrections Policy Directive 03.02.130 articulates the applicable grievance procedures for prisoners in MDOC custody.  Prior to submitting a grievance, a prisoner is required to "attempt to resolve the issue with the staff member involved within two business days after becoming aware of a grievable issue, unless prevented by circumstances beyond his/her control or if the

issue falls within the jurisdiction of the Internal Affairs Division in Operations Support Administration."
Mich. Dep't of Corr. Policy Directive 03.02.130 ¶ P.   If this attempt is unsuccessful (or such is
inapplicable), the prisoner may submit a Step I grievance.   *Id.*   The grievance policy provides the
following directions for completing grievance forms: "The issues should be stated briefly but concisely.
Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what,
when, where, why, how).   Dates, times, places, and names of all those involved in the issue being
grieved are to be included."   *Id.* at ¶ R.   The prisoner must submit the grievance to a designated
grievance coordinator, who assigns it to a respondent.   *Id.* at ¶ V.

If the prisoner is dissatisfied with the Step I response, or does not receive a timely
response, he may appeal to Step II within ten business days of the response, or if no response was
received, within ten business days after the response was due.   *Id.* at ¶ BB.   If the prisoner is dissatisfied
with the Step II response, or does not receive a timely Step II response, he may appeal the matter to Step
III.   *Id.* at ¶ FF.   The Step III grievance must be submitted within ten business days after receiving the
Step II response, or if no Step II response was received, within ten business days after the date the Step
II response was due.   *Id.*

Defendants' motion fails for two reasons.   First, Defendants concede that "Plaintiff has
filed numerous grievances through Step III" subsequent to the events giving rise to the present action.
(PageID.299).   Defendants argue that they are nevertheless entitled to relief because "[n]one of those
grievances, however, exhaust any of the claims brought in this § 1983 action."   (PageID.299).
Defendants have failed, however, to present any evidence or do any analysis in support of this assertion.
Defendants have submitted copies of MDOC Prisoner Step III Grievance Reports but have not explained
how these support their position.   In the absence of any such evidence, Defendants fall short of

satisfying their burden to obtain summary judgment.  Second, Plaintiff has responded to the present

motion by presenting evidence that he attempted without success to timely exhaust his administrative

remedies, but was thwarted because prison officials refused to provide him with the necessary grievance

forms.  (ECF Nos. 49, 50, 77).  This evidence, if believed, establishes that Plaintiff did, in fact, exhaust

all *available* administrative remedies.  Accordingly, Defendants are not entitled to summary judgment.

**CONCLUSION**

For the reasons articulated herein, the undersigned recommends that Defendants' Motion

for Summary Judgment, (ECF No. 45 and ECF No. 46), and Defendants' Motion for Summary

Judgment, (ECF No. 55 and ECF No. 56), be **denied**.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court

within fourteen (14) days of the date of service of this notice.  28 U.S.C. § 636(b)(1)(C).  Failure to file

objections within the specified time waives the right to appeal the District Court's order.  *See Thomas*

*v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

Respectfully submitted,

Date: March 25, 2016                                    /s/ Ellen S. Carmody
                                                        ELLEN S. CARMODY
                                                        United States Magistrate Judge