UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MORRIS WEATHERSPOON #471817,

       Plaintiff,                       Hon. Janet T. Neff

v.                                                 Case No. 1:14 CV 707

JAY CHOI, et al.,

       Defendants.
_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on Defendants' Motion for Summary Judgment, (ECF No. 162), Defendants' Motion for Summary Judgment, (ECF No. 164), and Plaintiff's Motion for Summary Judgment, (ECF No. 206). Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendants' motions be **granted**, Plaintiff's motion be **denied**, and this action **terminated**.

## BACKGROUND

Plaintiff is incarcerated in the Baraga Correctional Facility, but the events giving rise to his complaint occurred at the Richard A. Handlon Correctional Facility. Plaintiff initiated this action against fifty (50) named individuals, as well as various unknown parties.

In his amended complaint, Plaintiff alleges a vast conspiracy by prison employees to fabricate a major misconduct charge for the purpose of deeming him mentally ill and forcibly injecting him with psychotropic medications. Plaintiff maintains that he is not mentally ill and that Defendants are violating his Eighth Amendment rights by medicating him against his will. Plaintiff also asserts

claims concerning the conditions of his confinement while in segregation and an observation cell. Plaintiff further alleges that he was denied proper treatment for an abscess in his left leg.

Plaintiff made repeated demands to be discharged from the mental health program because he was not mentally ill, but the victim of a conspiracy. Defendant Caler allegedly threatened Plaintiff that, if he did not return to the treatment program, he would be transferred "to a discipline problem prison with inmates who suffer severe mental impairments, plagued by gangs sexual and physical assaults which is unsuitable to rehabilitate Plaintiff." Plaintiff further claims that Defendant Shafer "burst out in great laughter" when Plaintiff explained his conspiracy theory to him. Shafer further responded by telling Plaintiff that there was no conspiracy and no one was out to harm him.

Plaintiff alleges that he was forcibly confined to an observation cell on May 3, 2013, pending a mental health panel hearing scheduled for May 7, 2013. According to the Notice of Hearing prepared by Defendant Choi, Plaintiff had been agitated and delusional and refused his prescribed medication on the ground that he is not mentally ill. Defendant Choi further stated that Plaintiff had been loud and was experiencing hallucinations and paranoid delusions. Defendant Caler allegedly told Plaintiff that he was being placed on observation status because he was not taking his medication and was hearing voices. Plaintiff claims that he was placed into the observation cell without adequate clothing and was provided only "finger food." During a May 3, 2013 examination, Plaintiff stated that he was not suffering from mental illness and asked to be discharged from the mental health program.

Plaintiff claims that in preparation for the mental health panel hearing, Defendants Oetman and Desjarden refused to obtain Plaintiff's legal and personal property which allegedly contained "clear and convincing evidence, irrefutable and uncontravertible evidence" supporting his conspiracy theory. On May 7, 2013, Defendants Miller, Wood and Perez handcuffed Plaintiff and

transported him by wheelchair to the hearing. Plaintiff again asked Defendants Miller, Wood, and Perez to assist him in obtaining his personal and legal property in order to prove the conspiracy against him, but they refused. At the conclusion of the hearing, Defendant panel members Santiago, Busman, and Enz concluded that Plaintiff was mentally ill and that the proposed plan of service as stated by the treating psychiatrist was suitable. Plaintiff alleges that immediately after the hearing concluded, Defendants Miller, Wood and Perez used excessive force to restrain him while Defendant Castor injected Plaintiff with the powerful antipsychotic drug Risperdal. Plaintiff's appeal of the panel's decision was denied by Defendant Johnson on May 13, 2013.

Plaintiff was moved from the observation cell back to a regular segregation cell on May 8, 2013. Defendant Caler informed Plaintiff that he would be receiving injections of Risperdal every two weeks. On May 21, 2013, Defendants Johnston and Heard forcibly restrained Plaintiff while Defendant Lorentz injected him with Risperdal. Plaintiff alleges that he is suffering "horrific side effects" and "near death experiences" from the injected drugs. Plaintiff also claims that on June 13, 2013, Defendant Huyge denied him medical treatment for an abscess on his left femur.

In a March 20, 2015 Opinion and Order, the Honorable Janet T. Neff dismissed all of Plaintiff's claims save the following: (1) Eighth and Fourteenth Amendment claims against Defendants Choi, Caler, Castor, Lorentz, Santiago, Busman, Enz, Johnson, Wood, Desjarden, Oetman, Heard, McAuliffe (aka Lean), Johnston, Perez, and Miller "arising from the mental health panel proceedings that resulted in a finding of mental illness and the resulting forced medication" and (2) Eighth Amendment claim against Defendant Huyge "for denial of medical treatment for Plaintiff's abscessed femur." Plaintiff's claim against Defendant Huyge has since been dismissed. The remaining defendants now move for summary judgment. Plaintiff likewise has moved for summary judgment.

## SUMMARY JUDGMENT STANDARD

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party moving for summary judgment can satisfy its burden by demonstrating "that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). Once the moving party demonstrates that "there is an absence of evidence to support the nonmoving party's case," the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial." *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006).

While the Court must view the evidence in the light most favorable to the non-moving party, the party opposing the summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357. The existence of a mere "scintilla of evidence" in support of the non-moving party's position is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005). The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006).

Moreover, the non-moving party cannot defeat a properly supported motion for summary judgment by "simply arguing that it relies solely or in part upon credibility determinations." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004). Rather, the non-moving party "must be able to point to some facts which may or will entitle him to judgment, or refute the proof of the moving party in some material portion, and. . .may not merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Id.* at 353-54. In

sum, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735.

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, a moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002). Where the moving party has the burden, "his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561. Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

## ANALYSIS

**I.        Due Process**

It has long been recognized that prisoners "possess a significant liberty interest in avoiding the unwanted administration of antipsychotic drugs under the Due Process Clause of the Fourteenth Amendment." *Washington v. Harper*, 494 U.S. 210, 221-22 (1990). However, this interest must be balanced against the State's "interests in prison safety and security." *Id.* at 223. The Court balanced these important competing interests by concluding that "the Due Process Clause permits the State to treat a prison inmate who has a serious mental illness with antipsychotic drugs against his will,

if the inmate is dangerous to himself or others and the treatment is in the inmate's medical interest." *Id.* at 227. To ensure that these competing interests are properly balanced, Due Process requires that the State, before forcibly medicating a prisoner, conduct an administrative hearing"wherein medical decision makers assess the medical necessity of treating [the prisoner] despite his objections." *Hines v. Corrections Mental Health Program*, 2016 WL 5387658 at *3 (E.D. Mich., Aug. 22, 2016). The evidence before the Court reveals that Defendants acted consistent with this standard.

The evidence documents Plaintiff's need for mental health treatment as well as the risk Plaintiff posed to others if not properly treated. As of March 26, 2008, Plaintiff was diagnosed with psychotic disorder and personality disorder. (ECF No. 163 at PageID.1012). Treatment notes dated December 10, 2008, indicate that Plaintiff was making "marginal" progress, but "remains medication compliant." (ECF No. 163 at PageID.1019). Treatment notes throughout 2009, indicate that Plaintiff's condition was improving with medication. (ECF No. 163 at PageID.1021-30). Treatment notes dated July 28, 2010, indicate that Plaintiff's "symptoms of anxiety markedly decreased or eliminated" with medication. (ECF No. 163 at PageID.1031).

Treatment notes from 2012, however, reveal that Plaintiff's emotional functioning began to deteriorate. (ECF No. 163 at PageID.1033-38). Treatment notes dated February 15, 2013, indicate that Plaintiff was "extremely paranoid" and "mak[ing] inappropriate and illogical comparisons to unrelated situations and often contradicts himself." (ECF No. 163 at PageID.987). Plaintiff was diagnosed with: (1) psychotic disorder, NOS; (2) alcohol dependence; (3) cannabis dependence; and (4) personality disorder, NOS. (ECF No. 163 at PageID.989). Treatment notes dated April 16, 2013, indicate that Plaintiff "continues to be suspicious and defensive and guarded and paranoid." (ECF No. 163 at PageID.1067). Plaintiff refused to take prescribed medication. (ECF No. 163 at PageID.1067).

Treatment notes dated May 1, 2013, indicate that Plaintiff was expressing "persecutory delusions" and still "refusing his medication." (ECF No. 163 at PageID.1071). Plaintiff's GAF score was rated as 45.[1] (ECF No. 163 at PageID.1072). The process to consider "possible involuntary treatment" was initiated. (ECF No. 163 at PageID.1072).

On May 3, 2013, Plaintiff was examined by Dr. Jay Choi. (ECF No. 163 at PageID.994-96). The doctor reported that Plaintiff was "agitated and disturbed, his appearance reflect[s] poor hygiene, he was hallucinating and delusional, he is very loud and disturbed, he is also very paranoid, he was hearing voices and believes that staff set him up for him to be harmed, he accused staff [of] putting a 8 inch long knife on him, and he said staff were stealing money from him and diverting his mail, he shouts loudly." (ECF No. 163 at PageID.994-96). The doctor noted that Plaintiff "continues to be hypervigilant about his 'abuse, persecution and mistreatment' while in the DOC." (ECF No. 169-2 at PageID.1163). Dr. Choi concluded that Plaintiff was "significantly impaired" in the following areas: (1) judgment; (2) behavior; (3) capacity to recognize reality; and (4) ability to cope with the ordinary demands of life. (ECF No. 169-2 at PageID.1168). The doctor also noted that Plaintiff's GAF score had deteriorated to 40.[2] (ECF No. 163 at PageID.1074).

On May 6, 2013, Plaintiff was provided notice that a recommendation had been made to begin involuntarily medication. (ECF No. 163 at PageID.981-86, 992-96). Plaintiff was informed of his rights including the right to participate in a hearing on the matter. (ECF No. 163 at PageID.981-

---

[1] The Global Assessment of Functioning (GAF) score refers to the clinician's judgment of the individual's overall level of functioning. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 30 (4th ed. 1994) (hereinafter DSM-IV). A score of 49 indicates that the individual is experiencing "serious symptoms or any serious impairment in social, occupational, or school functioning." DSM-IV at 34.

[2] A GAF score of 40 indicates that the individual is experiencing "some impairment in reality testing or communication or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood." DSM-IV at 34.

86).  The following panel was assembled to hear the matter: (1) Dr. Armando Santiago, M.D., Psychiatrist; (2) Rebecca Busman, M.A., Psychologist; and (3) Erica Enz, Social Worker.  (ECF No. 163 at PageID.997).  The hearing was conducted with testimony being received from Dr. Choi and Plaintiff.  (ECF No. 163 at PageID.1001-07; ECF No. 169 at PageID.1155-57, 1177-89).  Dr. Choi reported that Plaintiff was experiencing psychosis and was "very paranoid."  (ECF No. 163 at PageID.1002; ECF No. 169 at PageID.1155-57, 1177-89).  The doctor recommended that Plaintiff be treated with psychotropic medications, involuntarily if necessary.  (ECF No. 163 at PageID.1002; ECF No. 169 at PageID.1155-57, 1177-89).  Plaintiff was given an opportunity to respond to Dr. Choi's conclusions and recommendations, but was intent on discussing various unrelated matters.  (ECF No. 163 at PageID.1002-07; ECF No. 169 at PageID.1155-57, 1177-89).  The panel concluded that Plaintiff was "mentally ill" and, furthermore, that Dr. Choi's treatment plan was appropriate.  (ECF No. 163 at PageID.997; ECF No. 169 at PageID.1155-57, 1160-72, 1177-89).  Plaintiff's appeal of the panel's decision was denied.  (ECF No. 169 at PageID.1174).

The hearing process by which the decision was made to forcibly medicate Plaintiff complies with the aforementioned standard.  Plaintiff advances several arguments to the contrary, none of which are persuasive.  First, Plaintiff argues that the panel members that resolved the forcible medication issue lacked the qualifications to make decisions about his mental health treatment.  Plaintiff has presented no evidence to support this argument.  Moreover, the panel, composed of a psychologist, psychiatrist, and a social worker, satisfies the Supreme Court's requirement that forcible medication decisions be made by medical professionals.  *Harper*, 494 U.S. at 228-31.  Plaintiff argues that he was not, in fact, mentally ill and did not require psychotropic medication.  This assertion simply enjoys no support in the record.

Plaintiff next argues that his ability to participate in the aforementioned hearing was improperly impeded because he was not permitted to introduce evidence challenging a prior misconduct conviction. The Court fails to discern the relevance of a prior misconduct violation on the question whether Plaintiff was then suffering from mental illness necessitating pharmacological treatment. Finally, Plaintiff claims that the panel members were improperly biased. However, Plaintiff offers no evidence to support this assertion. In sum, the evidence reveals that Defendants acted in accordance with Plaintiff's due process rights. Accordingly, the undersigned recommends that as to Plaintiff's due process claims, Defendants' motions be granted and Plaintiff's motion be denied.

## II.         Eighth Amendment

Plaintiff's Eighth Amendment claim likewise fails. To sustain an Eighth Amendment claim "for deliberate indifference related to unwanted medical treatment," Plaintiff must establish that he received "grossly inadequate care and that the treatment provided was so medically unsound as to violate the law." *Hines*, 2016 WL 5387658 at *2 (citation omitted). Grossly inadequate care is defined as "medical treatment so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Ibid*. (citation omitted). The evidence reveals that following the medication panel's decision, Plaintiff was administered an antipsychotic medication every two weeks, along with additional medications to prevent certain side effects of the antipsychotic medication. (ECF No. 163-3 at PageID.1045, 1078-79, 1081-82). Plaintiff has presented no evidence even suggesting that the care he received, while unwanted, was grossly incompetent, inadequate, excessive, or intolerable. Accordingly, the undersigned recommends that as to Plaintiff's Eighth Amendment claims, Defendants' motions be granted and Plaintiff's motion be denied.

## CONCLUSION

For the reasons articulated herein, the undersigned recommends that <u>Defendants' Motion for Summary Judgment</u>, (ECF No. 162), be **granted**; <u>Defendants' Motion for Summary Judgment</u>, (ECF No. 164), be **granted**; <u>Plaintiff's Motion for Summary Judgment</u>, (ECF No. 206), be **denied**; and this action **terminated**. The undersigned further recommends that appeal of this matter would not be taken in good faith. *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997); 28 U.S.C. § 1915(a)(3).

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

Respectfully submitted,

Date:  July 12, 2017

 /s/ Ellen S. Carmody  
ELLEN S. CARMODY  
United States Magistrate Judge